IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                                            CASE NO. 3:21cr66/TKW

JOHN E. ACKER
_____/

## FACTUAL BASIS FOR GUILTY PLEA

This statement of facts is submitted on behalf of the undersigned parties. All parties agree that if the above-captioned case were to go to trial, the government could produce competent, substantial evidence of the following facts to prove the Defendant is guilty of the counts of the Indictment to which the Defendant is pleading guilty. The parties further agree that all of the following facts are true and correct and that not all of the facts known from or related to this investigation are contained in this brief summary.

## STATEMENT OF FACTS

Defendant John E. Acker ("Acker") was the owner and registered agent of multiple corporations in the state of Florida, including Miracle Strip Holdings X LLC, Fujimo Development LLC, and Shipwreck Road LLC. Acker purportedly used these corporations to make business investments and conduct real estate transactions.

Between on or about May 1, 2013, and on or about October 9, 2020, Acker solicited and induced numerous individuals and corporate entities ("investors") to

1

invest money with him by making various materially false and fraudulent representations and promises, including that the investment was for a real estate or other business-related "deal" with high guaranteed returns. Acker fraudulently told "investors" the "deal" in which they were investing was the purchase and sale, or "flip," of one or more properties, usually described by Acker as a nursing home, assisted living facility, rehabilitation facility, or a set of fast-food chain franchises.

Acker used his relationships with other "investors," attorneys, businesses or business owners, and other prominent members of the community to influence "investors" to give him money. Acker often mischaracterized the nature of the relationship or falsely claimed a relationship existed when it did not. Acker also falsely claimed he had independent wealth from a trust fund, and Acker sometimes stated or implied he was personally investing in the same opportunity being offered or that he was capable of personally guaranteeing a return on the opportunity. Acker made these and other false and fraudulent misrepresentations in order to appear legitimate and induce trust, and "investors" relied on these material misrepresentations in deciding to give Acker money.

Instead of using the funds from "investors" for any investment or investment-related purpose claimed, Acker used the funds to pay personal expenses for himself and his family and to pay back prior "investors" whose funds Acker had misused. Acker failed to tell "investors" material facts about how their funds were actually

2

going to be used, and "investors" would not have given Acker any money had they known their funds would be used to pay Acker's personal expenses or to pay other "investors" who had previously given Acker funds.

Acker repeatedly solicited "investors" for additional funds by making various materially false and fraudulent representations and promises. Acker fraudulently told "investors" additional funds were needed for closing costs, earnest money deposits, or other things needed to close or complete their original "deal." Acker also fraudulently told "investors" additional funds were needed to secure financing or help close a different "deal," which they were guaranteed to get back. Sometimes Acker characterized these funds as loans that would be paid once the guaranteed "deal" was closed. However, Acker then used these additional funds to pay for personal expenses or to pay back other "investors" as well.

To perpetrate his scheme, Acker used multiple bank accounts in his name and in the name of corporations that he controlled, including, but not limited to: Wells Fargo Bank accounts ending in 3162 in the names of Acker and his wife at the time ("WF3162") and ending in 4656 in the name of Miracle Strip Holdings XV LLC ("WF4656"); Hancock Bank accounts ending in 4072 in Acker's name ("HB4072") and ending in 9695 in the name of Miracle Strip Holdings X LLC ("HB9695"); PNB Community Bank account ending in 5367 in the names of Acker and his wife ("PNB5367"); and Regions Bank accounts ending in 3036 in the name of Shipwreck

Road LLC ("RB3036") and ending in 7787 in the name of Fujimo Development LLC ("RB7787").

After Acker was made aware that he was under criminal investigation, Acker took steps to attempt to conceal his scheme to defraud, including telling "investors" Acker would send them a payment if they gave Acker all documents related to their dealings. Acker also fraudulently induced one "investor" to wire money directly to Acker's criminal defense attorney's trust account by falsely misrepresenting that the money was for closing a real estate "deal."

As a result of his scheme to defraud, Acker received over $4 million in fraudulently obtained funds, including, but not limited to, the "investors" identified by initials below. As part of his scheme to defraud, Acker caused the following transactions at financial institutions to occur, each of which constituted or caused an interstate wire communication:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| 1 | April 13, 2017 | $70,000 check from M.S. into WF3162 |
| 2 | April 14, 2017 | $38,000 wire transfer from M.S. to WF3162 |
| 3 | April 19, 2017 | $75,000 wire transfer from M.S. to WF3162 |
| 4 | April 26, 2017 | $100,000 wire transfer from M.S. to WF3162 |
| 5 | May 1, 2017 | $150,000 wire transfer from M.S. to WF3162 |
| 6 | August 6, 2018 | $30,000 check from B.H. LLC into HB9695 |
| 7 | October 24, 2018 | $10,000 check from B.H. LLC into HB9695 |
| 8 | October 25, 2018 | $2,000 check from HB4072 to D.C. |
| 9 | November 8, 2018 | $25,000 check from C.A.U. LLC into HB9695 |
| 10 | November 21, 2018 | $33,000 check from T.V. into HB9695 |
| 11 | February 4, 2019 | $71,000 wire transfer from S.R. to HB9695 |
| 12 | February 4, 2019 | $20,000 check from HB9695 to D.D. |

| COUNT | DATE | TRANSACTION |
|---|---|---|
| 13 | February 5, 2019 | $2,000 check from HB9695 to B.H. LLC |
| 14 | February 12, 2019 | $54,210 wire transfer from S.R. to HB9695 |
| 15 | February 13, 2019 | $1,500 check from HB4072 to D.C. |
| 16 | February 22, 2019 | $12,500 wire transfer from S.R. to HB9695 |
| 17 | February 22, 2019 | $36,210 wire transfer from S.R. to HB9695 |
| 18 | February 22, 2019 | $5,000 check from HB9695 to B.H. LLC |
| 19 | February 26, 2019 | $25,000 wire transfer from S.R. to HB9695 |
| 20 | February 28, 2019 | $32,500 check from S.R. into HB9695 |
| 21 | February 28, 2019 | $2,500 check from HB9695 to B.H. LLC |
| 22 | February 28, 2019 | $2,500 check from HB9695 to B.H. LLC |
| 23 | July 22, 2019 | $21,000 check from C.C. into HB9695 |
| 24 | September 12, 2019 | $32,000 check from C.C. into HB9695 |
| 25 | January 3, 2020 | $122,160 wire transfer from E.I. LP to PNB5367 |
| 26 | January 6, 2020 | $10,000 check from PNB5367 to K.B. |
| 27 | January 7, 2020 | $10,000 check from PNB5367 to D.C. |
| 28 | January 9, 2020 | $10,000 check from PNB5367 to T.W. |
| 29 | January 10, 2020 | $216,500 wire transfer from E.I. LLP to PNB5367 |
| 30 | January 10, 2020 | $10,000 check from PNB5367 to T.W. |
| 31 | January 10, 2020 | $25,000 check from PNB5367 to C.C. |
| 32 | February 6, 2020 | $25,000 wire transfer from B.J. to PNB5367 |
| 33 | February 7, 2020 | $28,000 wire transfer from B.J. to PNB5367 |
| 34 | February 7, 2020 | $10,000 check from PNB5367 to C.C. |
| 35 | July 17, 2020 | $175,000 wire transfer of from T.B.F. to RB3036 |
| 36 | July 17, 2020 | $50,000 wire transfer from RB3036 to B.J. |
| 37 | October 1, 2020 | $80,000 wire transfer from T.J.L. PC to S.K. IOLTA Trust Account |

Acker used the proceeds of his wire fraud scheme to conduct monetary transactions in an affecting interstate commerce within the United States, including the below:

| COUNT | DATE | TRANSACTION | AMOUNT |
|---|---|---|---|
| 38 | April 18, 2017 | Payment from WF3162 to Saks Retail credit card | $10,737.22 |
| 39 | May 1, 2017 | Payment from WF3162 to American Express credit card | $11,000.00 |
| 40 | May 2, 2017 | Payment from WF3162 to American Express credit card | $15,270.17 |
| 41 | February 12, 2019 | Transfer from HB9695 to HB4072 | $28,000.00 |
| 42 | February 15, 2019 | Cashier's check from HB9695 to Maddox Jewelers | $13,050.00 |
| 43 | July 22, 2019 | Check from HB9695 to Trading Post Pawn Shop | $18,000.00 |
| 44 | January 10, 2020 | Wire transfer from PNB5367 to Four Season Resort Vail | $17,500.00 |

## ELEMENTS

The Defendant can be found guilty of wire fraud, in violation of 18 U.S.C. § 1343, only if all the following facts are proved beyond a reasonable doubt:

(1) the Defendant knowingly devised or participated in a scheme to defraud someone, or obtain money or property, using false or fraudulent pretenses, representations, or promises;

(2) the false or fraudulent pretenses, representations, or promises were about a material fact;

(3) the Defendant intended to defraud someone; and

(4) the Defendant transmitted or caused to be transmitted by wire, radio, or television some communication in interstate commerce to help carry out the scheme to defraud.

The Defendant can be found guilty of money laundering, in violation of 18 U.S.C.§ 1957, only if all of the following are proved beyond a reasonable doubt:

6

(1) the Defendant knowingly engaged or attempted to engage in a monetary transaction;

(2) the Defendant knew the transaction involved property or funds that were the proceeds of some criminal activity;

(3) the property had a value of more than $10,000;

(4) the property was in fact proceeds of wire fraud as charged in the Indictment; and

(5) the transaction took place in the United States.

JASON R. COODY
United States Attorney

_____
JOHN L. WILKINS
Attorney for Defendant

_____
ALICIA H. FORBES & J. RYAN LOVE
Assistant United States Attorneys

_____
JOHN E. ACKER
Defendant

2/8/2022
Date

2/8/22
Date